ACCEPTED
04-15-00553-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/4/2015 11:33:49 AM
KEITH HOTTLE
CLERK

NO. _____04-15-00553-CV_____

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/4/2015 11:33:49 AM
KEITH E. HOTTLE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FOURTH DISTRICT OF TEXAS
## AT SAN ANTONIO

## IN RE: RUBEN GONZALEZ,

## Relator.

## RELATOR'S EMERGENCY MOTION FOR STAY
## OF MEDICAL EXAMINATION

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

RUBEN GONZALEZ, Relator, files this his Emergency Motion for Stay of Medical Examination and would show the Court the following:

## I.

## THE ORDER IN ISSUE

On August 25, 2015, Respondent signed an order which compels Relator to submit to a medical examination to be conducted by a doctor retained by Real Parties in Interest Premier Eagle Ford Services, Inc. ("Premier Eagle") and Abel Alvarado Casillas ("Casillas"). The medical examination is ordered to take place at 1:30 p.m. on September 9, 2015 in

-1-

San Antonio.  (*See* Exhibit "A").  Gonzalez lives in Laredo, which is approximately 150 miles away.  (MR 94).

Respondent is the Honorable Monica Z. Notzon, judge of the 111th Judicial District Court of Webb County, Texas.  (Ex. "A").

## II.

## BACKGROUND

On or about February 14, 2013, Relator, Ruben Gonzalez ("Gonzalez"), was driving westbound on FM 469 in Cotulla, La Salle, County, Texas. Casillas was driving a truck owned by Premier Eagle.  Casillas failed to yield the right of way and turned in front of Gonzalez's vehicle, causing him to veer to his right and strike the vehicle driven by Martin Garcia, Jr., a Plaintiff in the underlying lawsuit who is not a party to this original proceeding.  As a result of the collision, Gonzalez suffered severe mental and physical injuries.  (MR 95).  Gonzalez was initially brought into this suit as a Defendant, but he has filed cross-claims against Premier Eagle, Casillas, and one other party not present for this proceeding.  (MR 3, 94).

During the discovery stage of the underlying lawsuit, one of Gonzalez's treating physicians, Dr. Gerardo Zavala, recommended that Gonzalez undergo surgery which would involve the fusing and removal of four cervical

-2-

discs in his neck (the "4-disc surgery"). (MR 71-72). Premier Eagle and Casillas questioned Dr. Zavala about the 4-disc surgery in his deposition of February 23, 2015. (Id.).

Thereafter, Gonzalez obtained a second opinion from Dr. Alejandro Betancourt. (RR 12). Dr. Betancourt advised Gonzalez that he should have a single disc replacement surgery. (RR 12; MR 57, 59). Gonzalez decided to have the single disc surgery, and counsel for Gonzalez informed counsel for Premier Eagle and Casillas by email dated May 22, 2015, that Gonzalez "is going to move forward with surgery." (MR 79). Counsel for Gonzalez again informed counsel for Premier Eagle and Casillas by email dated May 26, 2015 that "... our client, Mr. Gonzalez, is going to go forward with surgery, ...". (MR 80).

Nevertheless, on July 22, 2015, after Gonzalez had the single disc surgery, five months after Premier Eagle and Casillas had deposed Dr. Zavala about the 4-disc surgery, and two months after knowing that the single disc surgery was going to occur, Premier Eagle and Casillas filed their Renewed Motion to Conduct Medical Examination[1] ("Renewed Motion"), this time asserting that they should be allowed to subject Gonzalez to a medical

---

[1] The original Motion to Conduct Medical Examination was denied. (MR 93).

examination by their chosen expert witness, a Dr. Gilbert Meadows. (MR 66). Premier Eagle and Casillas knew that Gonzalez had already had the single disc surgery. (RR 9).

Despite knowing that the single disc surgery had taken place, the Renewed Motion filed by Premier Eagle and Casillas said nothing about the single disc surgery. (MR 66-69). Instead, the Renewed Motion sought to examine Gonzalez for the purported purposed of allowing Dr. Meadows to determine whether Gonzalez should undergo the four disc surgery. (MR 66-69). This is the very same surgery which Gonzalez had already decided not to have and which he did not have.

A hearing on the Renewed Motion took place on August 25, 2015. (RR 1).

At the hearing, Gonzalez made Respondent aware of the fact that Gonzalez had already undergone single disc replacement surgery and that he had elected the single disc surgery rather than the 4-disc surgery, thereby making the Renewed Motion moot, and the requested medical examination unnecessary. (RR 12).

Gonzalez also pointed out that Premier Eagle and Casillas had failed to show good cause for the medical examination, primarily because less

intrusive means of discovery were still available to Premier Eagle and Casillas, and those less intrusive means of discovery had not been pursued. (RR 11, 13-15).

**III.**

## RELATORS CAN ESTABLISH THEIR RIGHT TO RELIEF

The Petition for Writ of Mandamus being filed contemporaneously with this Emergency Motion for Stay of Medical Examination demonstrates that Respondent in this original proceeding abused her discretion in at least two ways.

First, the Court should grant mandamus relief because the Renewed Motion to Conduct Medical Examination is moot, and the medical examination is unnecessary.

In their Renewed Motion, Premier Eagle and Casillas draw attention to the "four level cervical disc fusion surgery" and seek a medical examination for the purpose of determining whether the 4-disc surgery is necessary. (MR 66, 67-68). The Renewed Motion attaches the affidavit of Dr. Gilbert Meadows. (MR 81). Concerning the 4-disc surgery, Dr. Meadows opines that "[i]t is highly unlikely that Mr. Gonzalez will have a positive outcome from the proposed surgery." (MR 82). Dr. Meadows concludes his affidavit by stating

-5-

that "I would strongly recommend that Mr. Gonzalez undergo an independent medical examination before he undergoes a four level cervical fusion." (MR 83).

Thus, the purported purpose of the medical examination is to determine whether or not the 4-disc surgery recommended by Dr. Zavala is necessary. There is no mention of evaluating any other treatment options.

What the Renewed Motion did not disclose or address is the fact that *Gonzalez did not have the 4-disc surgery*. Instead, he had a single disc replacement surgery on July 14, 2015. (MR 57, 59, 62; RR 12). Gonzalez had that surgery before Premier Eagle and Casillas filed their Renewed Motion. (MR 66, 70). Thus, the purpose of Dr. Meadows's medical exam no longer exists. The entire issue is now moot.

Second, the Court should grant mandamus relief because there is no good cause for the medical examination. More specifically, there is no argument or proof from Premier Eagle and Casillas that they have exhausted less intrusive means of discovery.

The law is clear regarding the standard which a trial court must apply in determining whether to permit one party to force another party to undergo a medical examination. That standard has been prescribed in Rule 204 of the

Texas Rules of Civil Procedure and fleshed out by the courts.

Essentially, Rule 204 allows a trial court to compel a party to submit to a physical examination only for good cause and only when the person's mental or medical condition is in controversy. Tex. R. Civ. P. 204.1(c); *Coates v. Whittington*, 758 S.W.2d 749, 751 (Tex. 1988); *In re Transwestern Publishing Company*, 96 S.W.3d 501, 506 (Tex.App. – Fort Worth 2002, orig. proceeding); *In re Caballero*, 36 S.W.3d 143, 144-45 (Tex.App. – Corpus Christi 2000, orig. proceeding).

The term "good cause" is further broken down as having three elements, all of which must be met to establish good cause. They are:

1)   The examination is relevant to issues in the case and the examination will produce, or is likely to lead to, relevant evidence;
2)   There is a reasonable nexus between the condition of the person to be examined and the examination sought; and
3)   It is not possible to obtain the desired information through less intrusive means than a compelled examination.

Tex. R. Civ. P. 204.1(c); *Coates* at 753; *Transwestern* at 505; *Caballero* at 145.

To meet the third element, the party moving for the medical examination has the burden of proving that it has exhausted less intrusive means of discovery before it can be allowed to conduct the examination. *Coates* at

753; *Caballero* at 145.

In *Caballero*, the court of appeals granted mandamus because the trial court ordered a medical examination even though "the movants made no attempt to show that it is not possible to obtain the desired information through less intrusive means." *Caballero* at 145. The movants in *Caballero* had "not deposed the plaintiff's doctors." *Id*. Premier Eagle and Casillas have made the same mistake.

Even assuming that there is still a reason to determine the propriety of a 4-disc surgery, there are several avenues of discovery which Premier Eagle and Casillas could have opted to undertake in order to obtain the information they sought. None of these were addressed by Premier Eagle and Casillas. Those methods are: 1) deposing the doctor who performed the single disc surgery; 2) deposing Gonzalez's other treating physicians; and 3) conducting post-surgery written discovery.

A review of the Renewed Motion and the supporting exhibits demonstrates that Premier Eagle and Casillas not only failed to prove that they have exhausted less intrusive means of discovery, but they do not even address the issue. (MR 66-83). Though Dr. Meadows states in his affidavit that he does not believe the 4-disc surgery is necessary, and he discloses

what he has already reviewed pertaining to Gonzalez, he offers no reason why what he has seen is inadequate to reach an opinion which he already holds. (MR 81-83).

The issue of whether a less intrusive means of discovery was available arose at the hearing on the Renewed Motion, and Premier Eagle and Casillas offered no explanation or evidence there either. (RR 13-14, 15). Indeed, Respondent granted the Renewed Motion without demanding that Premier Eagle and Casillas respond to Gonzalez's argument that less intrusive means of discovery had not been exhausted. (RR 15). Thus, there is *no argument and no evidence anywhere in the record* that Premier Eagle and Casillas have exhausted less intrusive means of discovery.

**IV.**

## THE NEED FOR A STAY AND THE BASIS FOR THE EMERGENCY

The need for a stay of the medical examination is clear. Gonzalez is being ordered to submit to a medical examination without his consent. He has a compelling right to privacy which Respondent's Order invades. *See Coates* at 751.

The need for relief is urgent, since the medical examination has been ordered to take place on September 9, 2015, and that date will be reached

before this Court can rule on the merits of this Petition for Writ of Mandamus. Moreover, the medical exam is to take place in San Antonio, requiring Gonzalez to travel the 150 miles from Laredo.

Thus, Relator requests that this Court issue a stay of the medical examination well in advance of September 9, 2015.

Gonzalez does not seek to stay any other proceedings below or to stay the trial of this cause. Thus, the subject of the requested stay is limited to the medical examination, and the stay will not impede other proceedings.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** RUBEN GONZALEZ, Relator, prays that the Court grant this Emergency Motion to Stay Medical Examination and stay the trial court's August 25, 2015 Order Granting Cross-Defendants' Renewed Motion to Conduct Medical Examination until the Court has ruled on the merits of Gonzalez's Petition for Writ of Mandamus. Relator also prays for such other and further relief to which he may be justly entitled.

Respectfully Submitted,

Jaime A. Gonzalez, Jr.
State Bar No. 08127600
Hector L. Rodriguez
State Bar No. 00791555
**GONZALEZ & ASSOCIATES LAW FIRM, LTD.**

-10-

Summit Park North
817 E. Esperanza Ave.
McAllen, Texas 78501
(956) 664-0100 (telephone)
(956) 664-1529 (facsimile)

/s/ *David H. Jones*
DAVID H. JONES
State Bar No. 10869590
**LAW OFFICE OF DAVID H. JONES**
6521 North 10th St., Suite E-1
McAllen, Texas 78504
Telephone: (956) 627-6350
Email: David@DHJlawfirm.com

ATTORNEYS FOR RELATOR
RUBEN GONZALEZ

## CERTIFICATE OF RULE 52.10 COMPLIANCE

The undersigned certifies that Relator has complied with Rule 52.10(a) of the Texas Rules of Appellate Procedure by notifying all parties by expedited means (by telephone or by fax) that this motion for temporary relief has been or will be filed. Counsel for Real Parties in Interest, Steve Navarro, informed me that he is opposed to the relief requested herein.

/s/ *David H. Jones*
David H. Jones

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was delivered in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure to the following on this the 4th day of September, 2015:

Hon. Monica Z. Notzon
Judge, 111th Judicial District
1110 Victoria Street
Laredo, Texas 78040
*Respondent*

Stephen D. Navarro
Naman Howell Smoth & Lee, PLLC
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
*Attorney for Real Parties in Interest*

/s/ *David H. Jones*
David H. Jones